**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | | |
|---|---|---|
| **IN RE: JUSTIN COLIN DENARDO** | : | **CASE NO. 26-00300** |
| | : | |
| | : | **CHAPTER 13** |
| **Debtor** | : | |

**OBJECTION TO CONFIRMATION**

C3 Rentals LLC, ("C3"), a creditor in this case, hereby objects to confirmation of Debtor Justin DeNardo's (the "Debtor") Chapter 13 plan on the following grounds:

1. On July 8th, 2025 the Debtor leased a 2025 GNTR 56W trailer (the "Trailer") from C3. On February 17th, at the Debtor's 341 Meeting of Creditors, the Debtor testified that he had sold the Trailer to an individual that he met through Facebook marketplace and that he was unaware of the individual's name (the "Unauthorized Sale"). The Debtor further testified that his income was $2,000 per week on account of a new job that he had recently started.

2. Following Debtor's testimony, Debtor repeatedly assured C3 that C3's trailer was being recovered from the purchaser. After a prolonged period of repeated assurances, the Debtor claimed that he was ultimately unable to recover the trailer.

3. Despite the Unauthorized Sale, the Debtor assured C3 that it would be made whole through the Chapter 13 plan. C3 refrained from pursuing other available remedies in reliance on Debtor's representations and proposed plan treatment.

4. Consistent with the Debtor's representations, on May 20th, 2026, he amended his plan to provide for treatment of C3 as a secured creditor with a claim amount of $18,422.57 which equaled the amount of the payments remaining on the lease for the Debtor to obtain ownership of the trailer. See Amended Plan, Dkt. 36.

5. Following Debtor's amendment of the plan, C3 amended its claim consistent with the plan's provisions. See Proof of Claim No. 4-2.

6. On May 12, 2026, the Debtor amended his schedules I and J.

7. On July 23, 2026, the Debtor amended his schedules A/B and C.

8. On August 5th, nearly seven months after the case was filed and following the deadline to object to dischargeability, the Debtor amended his plan again, removing the secured distribution to C3 and simply rejecting C3's lease.

## OBJECTIONS TO CONFIRMATION

9. C3 objects to confirmation because the Plan was not proposed in good faith, as required by 11 U.S.C. § 1325(a)(3), and because the Plan neither pays unsecured claims in full nor commits all projected disposable income to payments to unsecured creditors, as required by 11 U.S.C. § 1325(b)(1)(B).

### I. THE PLAN WAS NOT PROPOSED IN GOOD FAITH

10. The Bankruptcy Code provides that the Court shall confirm a Chapter 13 plan only if, among other things, "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). C3 objects to the Plan because it was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

11. The Fourth Circuit has made clear that the good-faith inquiry asks whether, under the circumstances, the proposed plan constitutes an "abuse of the provisions, purpose, or spirit" of Chapter 13. *Goddard v. Burnett*, No. 25-1303 (4th Cir. 2026).

12. Here, the Debtor's course of conduct is a clear abuse of the provisions, purpose, and spirit of the Bankruptcy Code. The Debtor leased a trailer from C3—for which C3 paid $10,000.00—and then simply turned around and sold it. Such conduct would render the debt non-

dischargeable under 11 U.S.C. §§ 523(a)(2), (4) and (6). C3 relied on the representations of the Debtor that C3 would be made whole through plan treatment and amended its claim consistent with that treatment, and only after the deadline to object to dischargeability passed, nearly seven months after the case was filed, did the Debtor amend the plan again to eliminate C3's treatment and reject the lease. That sequence is not an "honest effort to repay his creditors," but an inequitable use of Chapter 13 at C3's expense.

13. Debtor's amended Schedule J also reflects a bad faith attempt to manipulate the Chapter 13 process and incur and retain unnecessary and luxurious expenses to the detriment of his creditors. For example, Debtor's original Schedule J—filed January 22nd—listed a monthly rental expense of $700.00. After securing new employment at higher compensation, Debtor amended his schedule J to claim a $2,025.00 monthly rental expense, and Debtor's current address reflects that, despite being single and without dependents, he leased a brand new, three-bedroom home whose listing boasted of granite countertops, tile backsplash, stainless appliances, and a "huge walk-in closet."[1]

14. Chapter 13 does not permit a debtor to fund a post-petition lifestyle upgrade while limiting the recovery to unsecured creditors. A single debtor with no dependents cannot reduce his projected disposable income by voluntarily leasing a new luxury three-bedroom home after his income increased. *In re Daniel*, 260 B.R. 763, 769 (Bankr. E.D.Va. 2001) (denying confirmation where debtors plan budget provided for the payment of nonessential luxury items); *In re Reyes*, 106 B.R. 155, 158 (Bankr. N.D. Ill. 1989) ("Chapter 13 debtors should not be able to continue the extravagances which put them into bankruptcy, while their unsecured creditors go unpaid.").

---

[1] https://www.trulia.com/home/107-lynn-ln-selma-nc-27576-453278348

15. The Debtor's manipulation of his expense schedules is not limited to housing: after amending his Schedule I to reflect his new, higher income, he also raised his monthly scheduled expense amounts for: (a) telephone (and related services) from $60.00 to $300.00; (b) food and housekeeping supplies from $500.00 to $750.00; (c) Personal care products and services from $25.00 to $200.00; (d) Transportation (not including car payments) from $250.00 to $400.00; and (e) Car payment from $0.00 to $889.00.

16. Debtor's actions, individually and in total, represent an attempt to manipulate the Chapter 13 process at the expense of the creditors, and such conduct does not satisfy the good faith required for confirmation.

## II. THE PLAN FAILS TO PROVIDE FOR THE PAYMENT OF UNSECURED CLAIMS IN FULL NOR DEVOTES ALL DISPOSABLE INCOME TO PAYMENTS TO UNSECURED CREDITORS.

17. The Bankruptcy Code provides that, if a holder of an allowed unsecured claim objects to confirmation of the plan, then court may not confirm the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

18. The manipulation of Debtor's schedules and his choice to unnecessarily increase expenses also demonstrates noncompliance with § 1325(b)(1)(B).

19. The Court in *In re Gibson* considered "whether a Chapter 13 plan may be confirmed when the plan provides less than full payment to unsecured creditors while permitting the debtor to retain a luxury automobile while paying for the vehicle through the plan." *In re Gibson*, 142 B.R. 879 (Bankr. E.D. Mo. 1992). Finding that the substantial expenses associated with such automobiles "may be desirable to the debtor" but are "not reasonably necessary," the

Bankruptcy Court for the Eastern District of Missouri sustained objections to confirmation, holding that the debtors had failed to apply all of their disposable income to the plan pursuant to 11 U.S.C. § 1325. *Id*. at 882-883. Further, had either debtor in Gibson "included their car payments in the schedule of monthly expenses, the court would have entertained and granted an objection under § 1325(b)(1)(B) as to the reasonable necessity of those expenses." *Id.*

20. Section 1325(b)(1)(B) does not permit a debtor to manufacture a lack of disposable income by increasing discretionary expenses after receiving additional income. Here, the Debtor's amended schedules show precisely that: when his income increased, the benefit of that increase did not flow to unsecured creditors, but was instead consumed by new and inflated expenses for the Debtor's own benefit. The Debtor's post-petition decision to lease a substantially more expensive home, incur an $889.00 monthly car payment, and increase multiple household expense categories improperly reduces the disposable income available to creditors. Because those expenses are not reasonably necessary, the amounts allocated to them constitute projected disposable income that must be applied to payments to unsecured creditors under § 1325(b)(1)(B).

WHEREFORE, C3 Rentals respectfully requests: (i) that confirmation of the Debtor's plan be denied, and (ii) for any such further and other relief as the Court may deem appropriate. Respectfully submitted, this 20th day of August, 2026.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ James S. Livermon, III
James S. Livermon (State Bar No. 26492)
Email: charlie.livermon@wbd-us.com
Eudora F. S. Arthur (State Bar No. 59854)
Email: dorie.arthur@wbd-us.com
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: 919-755-2148
*Counsel for C3 Rentals, LLC*